# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH FUHRMAN and RANDY FUHRMAN, | : |
| Plaintiffs, | : |
| | : Case No. 1:09-CV-00841 |
| v. | : |
| QUILL CORPORATION, et al., | : (Judge Conner) |
| Defendants. | : |

## MEMORANDUM

Presently before the court is Defendants Automotion, Inc., and Precision Conveyor Concepts, Inc.'s Motions to Dismiss. (Docs. 36 & 38.) The court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because the allegations in the Complaint (Doc. 1) implicate Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2 ("Title VII"). The court exercises supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### PROCEDURAL HISTORY

Prior to the commencement of this suit, Plaintiff Leah Fuhrman ("Ms. Fuhrman") filed a sexual discrimination/harassment complaint with the Equal Employment Opportunity Commission (the "EEOC") (EEOC Doc. No. 530-2008-01701) against Defendant Quill Corporation. (Doc. 1 at 5 & Ex. A.) The EEOC issued a right-to-sue letter on February 5, 2009. (Id. at 5 & Ex. A.) On May 5, 2009, Ms. Fuhrman and her husband, Randy Fuhrman ("Mr. Fuhrman") filed their Complaint in this action. (Id.) Plaintiffs' Complaint is timely and alleges state and federal law claims against Defendants Staples, Inc., and its wholly owned subsidiary, Quill Corporation (collectively, "Quill/Staples"), as well as Automotion, Inc. ("Automotion"),

1

Precision Conveyor Concepts, Inc. ("Precision"), and Alexander Hernandez-Lopez ("Hernandez-Lopez"). (Id. at 2.) In addition to her Title VII sexual harassment claim, Ms. Fuhrman brings claims of negligence, assault, battery, false imprisonment, violation of the Pennsylvania Human Relations Act, codified at 43 Pa. Stat. Ann. §§ 951–963 (the "PHRA"), and intentional infliction of emotional distress ("IIED"). (Id.) Mr. Fuhrman brings a claim for loss of consortium. (Id.)

On August 19, 2009, the court ordered the parties into court-annexed mediation in accordance with Standing Order 04-3, In Re Authorizing Systematic Random Mandatory Mediation Referrals in Certain Case Types (M.D. Pa. Jul. 26, 2004). (Doc. 33.) Defendants Automotion and Precision (jointly, "A&P")[1] filed a Joint Motion to Dismiss Plaintiff's claims against them (the "Motion") (Docs. 36 & 38) and a Brief in Support of the Motion (the "A&P Brief") (Docs. 37 & 39)[2] on August 31, 2009. We summarize A&P's arguments as to why we should dismiss Plaintiffs' claims against them as follows:

1. Because the EEOC complaint and resulting right-to-sue letter named only Quill as a prospective defendant, Plaintiffs have failed to exhaust their administrative remedies against A&P and are barred from asserting a Title VII claim against them;
2. Respondeat superior liability should not apply to Plaintiffs' claims for IIED, negligence, assault and battery, false imprisonment, and loss of consortium because Hernandez-Lopez acted outside the scope and course of his employment
3. In the employment context, A&P's treatment of Hernandez-Lopez's conduct towards Ms. Fuhrman was not sufficiently outrageous to support an IIED claim; and
4. Because A&P had no notice or reason to know of Hernandez-Lopez's violent tendencies, A&P did not breach its duty as an employer by failing to prevent the harassment and attack on Ms. Fuhrman.

(Doc. 37 at 5–17.)

---

[1] Insofar as Ms. Fuhrman alleges that Precision is a subcontractor of Automotion and that Hernandez-Lopez was an employee for either Automotion or Precision, we will refer to these two corporate defendants collectively as "A&P" where their employees' conduct is in question or when referring to their Joint Motion (Doc. 36 & 38).
[2] Because the motions (Docs. 36 & 38) and briefs (Docs. 37 & 39) submitted by Automotion and Precision are identical, we will cite only to Automotion's Motion (Doc. 36) and Brief (Doc. 37).

Plaintiffs filed their Brief in Opposition to the Motion ("Plaintiffs' Brief") on September 15, 2009. (Doc. 40.)

The Motion is before the court and ripe for adjudication. Because resolution of the Motion could be dispositive with regard to Defendants A&P, we will rule on it now rather than await the outcome of the court-annexed mediation.

### FACTUAL BACKGROUND

The gravamen of the Complaint is that Ms. Fuhrman was a victim of gender discrimination and sexual harassment in her workplace and that this treatment culminated in a physical and sexual assault by Hernandez-Lopez on October 22, 2007. Ms. Fuhrman alleges that she experienced sexual harassment while she was an employee of Quill/Staples, "including regular, insulting[,] and derogatory comments and conduct . . . which created a hostile and offensive work environment." (Doc. 1 at 2.)

In June 2007, Ms. Fuhrman began working as a production associate at the Quill/Staples facility in Lebanon, Pennsylvania (the "facility"). (Id. at 6.) She alleges that in October 2007, A&P had employees working for Quill/Staple at the facility. (Id. at 6.) Ms. Fuhrman was pregnant at that time. (Id. at 6.)

On October 8, 2007, Ms. Fuhrman alleges that Hernandez-Lopez and his fellow A&P employees "began approaching [her] numerous times throughout her work day and inquired into her marital status, pregnancy, physical appearance, [and] happiness with her spouse, and made derogatory statements of a sexual and hostile nature towards her." (Id. at 7.) Ms. Fuhrman alleges that she immediately notified the A&P employees that their behavior made her uncomfortable and was unwelcome. (Id. at 7.) She also notified her supervisor of the A&P employees' conduct and the fact that they were standing around staring at her and the other

female Quill/Staples employees rather than working. (Doc. 1 at 8.) Ms. Fuhrman alleges that her supervisor laughed and responded, "I see you were popular with the Mexican workers." (Id. at 8.) In any event, the A&P employees' behavior towards Ms. Fuhrman allegedly continued unabated, culminating in a physical and sexual assault by Hernandez-Lopez. (Id. at 7.)

On October 22, 2007, Ms. Fuhrman alleges that Hernandez-Lopez followed her into a secluded area of the facility and requested that Ms. Fuhrman kiss him for his birthday. (Id. at 8.) Ms. Fuhrman refused, at which point Hernandez-Lopez allegedly physically and sexually attacked Ms. Fuhrman by "forcefully biting, grabbing at her face, head, and breasts, and pinning her" against some nearby warehouse racks. (Id. at 8, ¶¶ 46–47.) "Ms. Fuhrman demanded that he stop, and after approximately 20 minutes, she was able to break free and run to an employee at the other end of [the facility] for assistance." (Id. at 8, ¶¶ 46–47.)

Ms. Fuhrman alleges that the harassment and attack she suffered while employed at Quill/Staples caused her physical, emotional, financial, and professional injuries. (Id. at 10, ¶¶ 59–62.) Mr. Fuhrman alleges that he has lost the "comfort, companionship, and society of his wife" as a result of these events. (Id. at 29–30, ¶¶ 157–162.) Plaintiffs request actual, compensatory, and punitive damages, as well as attorneys' fees and costs. (Id. at 6–31.)

### DISCUSSION

**I. Motion to Dismiss Standard**

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff

and must accept all well-pleaded allegations as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original, internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949–50 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949

(quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion. See Fed. R. Civ. P. 8(a)(2).

## II. Plaintiffs' Claims against A&P

### A. Title VII/PHRA Claim

Defendants A&P argue that we should dismiss Counts I (Title VII) and II (PHRA) of the Complaint because they are procedurally barred. A&P assert that because Ms. Fuhrman did not name them as defendants in her EEOC complaint, she did not exhaust her administrative remedies against them and may only bring suit against Quill/Staples. A&P also note that Ms. Fuhrman was represented at the time that she filed the EEOC complaint and argue that this fact removes her from the sphere of any procedural exception to Title VII's exhaustion requirement.

Ms. Fuhrman contends that she was unable to determine the exact identity of A&P at the time she filed her EEOC complaint despite her best efforts. She also argues that the workers' compensation claim proceedings, which took place while the EEOC complaint was pending and likely involved discussions with A&P regarding indemnity, were sufficient to put A&P on notice that they might be sued in connection with the events of October 2007. Because the parties have not as yet conducted discovery, Ms. Fuhrman argues that it would be premature to dismiss the Title VII claim at this stage of the litigation. We agree and will deny A&P's Motion with regard to Plaintiffs' Title VII claim at this time.

"Under the Title VII framework, a plaintiff must exhaust the available administrative remedies by filing charges with either the EEOC or the Pennsylvania Human Relations

Commission (PHRC), before filing an action under the statute." Zezulewicz v. Port Auth. of Allegheny County, 290 F. Supp. 2d 583, 591 (W.D.Pa. 2003) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997)). "[T]he EEOC must issue a right to sue letter if it decides not to pursue the charges on plaintiff's behalf," and the court can dismiss a plaintiff's claims if she fails to exhaust her administrative remedies. Zezulewicz, 920 F. Supp. 2d at 591. The language employed by the courts with regard to exhaustion is permissive, rather than mandatory, and the rationale is policy-based. Id. "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).

For this reason, "[a] Title VII action ordinarily may be brought only against a party previously named in an EEOC action." Schafer v. Bd. of Pub. Educ., 903 F.2d 243, 252 (3d Cir. 1990) (citing 42 U.S.C. § 2000e-5(f)(1)). "Nevertheless, this court recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer, 903 F.2d at 252 (citing Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981)). To determine commonality of interest, the court should consider the following four factors:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar to the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id.

Because the purpose behind the commonality of interest exception is to protect parties unfamiliar with Title VII litigation, the majority of our courts have held that only unrepresented plaintiffs may invoke it. See Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1, 9 (E.D.Pa. 2001) (citing Harrington v. Hudson Sheraton Corp., 2 F. Supp. 2d 475, 478 (S.D.N.Y. 1998) (noting that courts should be flexible with Title VII procedural requirements when parties "who are not versed in the vagaries of Title VII" file such charges); Tarr v. Credit Suisse Asset Mgmt., 958 F. Supp. 785, 794 (E.D.N.Y. 1997); Sharkey v. Lasmo, 906 F. Supp. 949, 955 (S.D.N.Y. 1995)). See also Love v. Pullman Co., 404 U.S. 522, 527 (1972) (noting that "[s]uch technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process"); Smith v. Am. President Lines, Ltd., 571 F.2d 102, 105 (2d Cir. 1978) ("We are mindful that we must construe the procedural requirements of Title VII with liberality in view of its beneficial purposes in exposing unlawful discrimination."). Additionally, we note that the PHRA is the counterpart to the federal anti-discrimination law and "[t]he analysis of the claims is identical." Burgh v. Borough Council of Borough of Montrose, 251 F.2d 465, 469 (3d Cir. 2001). Unlike Title VII, however, the PHRA contains no cap on compensatory damages. Gagliardo v. Connaught Lab., Inc., 311 F.3d 565, 570–71 (3d Cir. 2002).

As A&P note, Plaintiffs can escape Title VII's exhaustion requirement only under very limited circumstances, such as when the plaintiff is pro se. As a preliminary matter, the fact that Ms. Fuhrman was represented by counsel at the time that she filed her EEOC complaint militates against applying the commonality of interest exception. We find the Second Circuit's approach in Egelston v. State Coll. at Geneseo, 535 F.2d 752, 754–55 (2d Cir. 1976), to be instructive on this point. Egleston suggests that courts should, under limited circumstances, consider

commonality of interest analysis to permit suits against parties unnamed in the EEOC proceedings even where the plaintiff was represented when the EEOC complaint was filed. Id. ("Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer . . . . Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Prior decisions, both of the Supreme Court and of this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today."). This more permissive approach seems especially appropriate early in litigation, when parties have not yet had a chance to conduct discovery and where dismissing the claim cuts off a party's right to present his case. See Egleston, 535 F.2d at 754; Phillips, 515 F.3d at 232.

In light of the fact that the parties have not yet conducted discovery, therefore leaving questions of sufficiency of notice and commonality of interest between Defendants unanswered, the court will decline to dismiss Counts I (Title VII) and II (PHRA) of the Complaint against A&P at this time.

### B. State Law Claims

In their Complaint, Plaintiffs allege a number of state law claims against A&P, e.g., Count III (IIED), Count V (assault and battery), Count VI (false imprisonment), and Count VII (loss of consortium). Plaintiffs requests that the court exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

"Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558 (2005).

"Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Where the exercise of supplemental jurisdiction is appropriate, we are bound to apply state law to the state law claims. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) ("The authority and only authority is the State, and if that be so, the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word."). We may decline to exercise our supplemental jurisdiction where:

(1) The claim raises a novel or complex issue of State law,
(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) The district court has dismissed all claims over which it has original jurisdiction, or
(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C § 1367(c).

In the present case, Plaintiffs' state law claims arise from the same events as Ms. Fuhrman's Title VII claim. The state law claims do not involve novel or complex areas of state law, nor do they predominate over the federal claims. Moreover, trying Plaintiffs' state and federal law claims together honors considerations of judicial economy and convenience. The court will therefore exercise supplemental jurisdiction over these claims.

### 1. Respondeat Superior Liability

A&P argue that the court should not impose respondeat superior liability on them for Hernandez-Lopez's conduct towards Ms. Fuhrman. A&P argue that respondeat superior liability is inappropriate because Hernandez-Lopez was acting outside the scope of his employment at the time of the assault. Additionally, Automotion disavows being Hernandez-Lopez's employer.

Ms. Fuhrman argues that A&P's failure to intercede following her complaints to her Quill/Staples supervisor show that A&P acquiesced to their employees' behavior. The court finds that Hernandez-Lopez's conduct falls outside the scope of his employment and will therefore dismiss Ms. Fuhrman's respondeat superior liability claim against A&P.

"It is well settled that an employer is vicariously liable for the negligent acts of his employee which cause injuries to a third-party, provided that such acts were committed during the course of and within the scope of the employment." Valles v. Albert Einstein Med. Center, 758 A.2d 1238, 1244 (Pa. Super. Ct. 2000) (citing Costa v. Roxborough Mem. Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998). Whether an employee's conduct is within the scope of employment depends on four factors:

> (1) it is of a kind and nature that the employee is employed to perform;
> (2) it occurs substantially within the authorized time and space limits;
> (3) it is actuated, at least in part, by a purpose to serve the employer; and
> (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

Costa, 708 A.2d at 493. See also Matsko v. United States, 372 F.3d 556, 559–60 (3d Cir. 2004).

"In certain circumstances, an employer's vicarious liability may also extend to intentional or even criminal acts committed by the employee." Costa, 708 A.2d at 493 (citing Fitzgerald v. McCutcheon, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979)). This is not the case, however, where "the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason," at which point, "the employer is not responsible as a matter of law." Fitzgerald, 410 A.2d at 1272. For example, "[i]f an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." Id.

11

In applying these principles to the facts of the present case, the court finds that the A&P employees' conduct, specifically that of Hernandez-Lopez, did not fall within the scope of employment with A&P. Although the harassment and assault of Ms. Fuhrman occurred within the authorized time and space limits of the A&P employees' employment, it is difficult to see how it was motivated by a desire to serve A&P or was the type of conduct for which the employees were hired. Moreover, given that the A&P employees were at the facility to do installation work for Quill/Staples, it seems unlikely that the intentional use of force was expected by their employer. Matsko, 372 F.3d at 559–60. Based on Ms. Fuhrman's assertions and allegations, the court concludes that the A&P employees' conduct, especially Hernandez-Lopez's assault on Ms. Fuhrman, was undertaken for personal reasons wholly outside the scope of employment. The court will therefore grant A&P's Motion to Dismiss with regard to Ms. Fuhrman's respondeat superior liability claims against them.

### 2. IIED Claim

A&P also argue that the court should dismiss Ms. Fuhrman's IIED claim against them insofar as she raises the claim under a theory of direct liability. A&P assert that direct liability would be inappropriate for the IIED claim because Mrs. Fuhrman alleges no conduct by A&P that is sufficiently outrageous to support the claim. Ms. Fuhrman predicates her IIED claim on the emotional distress she suffered as a result of Hernandez-Lopez's attack on her and concludes that she states a claim for IIED against both A&P and Hernandez-Lopez. We disagree with Mrs. Fuhrman's assessment of this claim and will dismiss the IIED claim against A&P.

Although the Supreme Court of Pennsylvania has not explicitly stated that the tort of IIED exists in Pennsylvania, case law implies that the tort is actionable. Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing with approval the Restatement (Second

12

of Torts § 46(2) as delineating the minimum elements necessary to sustain an IIED claim). "The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." Kazatsky v. King David Mem. Park, Inc., 527 A.2d 988, 991 (Pa. 1987). The Restatement (Second) of Torts § 46 provides, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress on another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." "The cases thus far decided have found liability only where the defendant's conduct has been . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. cmt. d (1965); see also Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (employing the same language as the Restatement).

"At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (citing Rinehimer v. Luzerne County Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)). "Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." Cox, 861 F.2d at 395; see also Hoy, 720 A.2d at 754.[3]

---

[3] For examples of conduct sufficiently outrageous to support an IIED claim outside the employment context, see Chuy v. Phila. Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from a fatal disease when physician knew such information was false); Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried the body in a field where it was discovered two months later and returned to plaintiffs).

Ms. Fuhrman alleges that she was sexually harassed by Hernandez-Lopez and other A&P employees during October 2007 and that the harassment culminated in a sexual and physical assault, for which Hernandez-Lopez was criminally charged. (Doc. 40 at 24–26, Ex. B.) The sexual and physical harassment alleged is "highly offensive and unacceptable conduct," Hoy, 720 A.2d at 755, and is likely sufficient to support an IIED claim against Hernandez-Lopez individually. Mrs. Fuhrman does not allege, however, that A&P engaged in or conspired to engage in retaliation against Ms. Fuhrman, or that A&P's treatment of the complaints of harassment was outrageous. Without such allegations of direct involvement upon which to predicate liability, the IIED claim against A&P fails. The court will therefore grant A&P's Motion to Dismiss Ms. Fuhrman's IIED claim against them.

### 3. Negligence Claim

In addition to advocating that the court impose liability on A&P through the operation of respondeat superior, Ms. Fuhrman also argues that the court should impose liability on A&P directly due to their negligence in hiring, training, and/or supervising Hernandez-Lopez. A&P argue that they had no prior knowledge of their employees' verbal harassment of Ms. Fuhrman and that, as independent contractors with Quill/Staples, they had no duty to Ms. Fuhrman to provide a safe workplace free from unreasonable and foreseeable risks of harm. The court finds that it would be premature to dismiss Ms. Fuhrman's negligence claim against A&P and will therefore deny A&P's Motion with regard to this claim.

Employers in Pennsylvania have a "duty to exercise reasonable care in selecting, supervising, and controlling employees." R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. Ct. 2000) (referencing Restatement (Second) of Torts § 317 (1965) and Restatement (Second) of Agency § 213 (1958) as consistent with Pennsylvania state law). "To

14

fasten liability upon an employer under [Restatement (Second) of Torts] § 317, it must be shown that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 421 (Pa. 1968). Moreover, "the knowing [e]mployment of a dangerous employee who inflicts injury upon a fellow employee constitutes a common law tort of the part of the employer." Id. This principle holds true "whether the injury result[ed] from negligence in doing the master's work, or from an assault made by a dangerous, drunken[,] and desperate employee, if his reputation was such that the master might reasonably have foreseen such consequences." Id.

  A&P cite Costa, 708 A.2d 490, for the proposition that prior knowledge of erratic behavior is insufficient to put the employer on notice of a propensity for violence by an employee. The facts of the present case distinguish it from Costa, which involved a hospital worker who assaulted a security guard after the guard became suspicious that the worker was using drugs and asked him to take a drug test. Id. at 496. The guard cited the worker's prior drug use, criminal history, and alleged drug dealing as reasons to believe that the worker might be violent when asked to take a drug test. Costa, 708 A.2d at 496. The Superior Court of Pennsylvania found that the disputed issue in the case was "whether [the hospital] knew or had reason to know of [the worker's] violent propensity and the necessity to control him, in addition to the opportunity and ability to do so in order to prevent him from intentionally harming others." Id. (citing Restatement (Second) of Torts § 317 cmt. a). The court found that nothing in the worker's history, including his criminal background, indicated a propensity for violence nor did the parties present "any evidence suggesting a more thorough hiring procedure would have revealed such information." Id.

15

In contrast, Ms. Fuhrman alleges that the A&P employees harassed her consistently for a month prior to the assault by Hernandez-Lopez, and that she reported this behavior to her supervisor. Both of these facts, if true, would put Defendants on notice that the A&P employees threatened the safe work environment at the facility. Ms. Fuhrman's reports to her supervisor may have been sufficient to put A&P on notice of their employees' behavior towards her; it is likewise conceivable that A&P knew or should have known that Hernandez-Lopez had a propensity towards sexual harassment earlier in the course of his employment. In viewing the allegations in the light most favorable to the Plaintiffs and in light of the fact that the parties have not yet completed discovery, the court cannot, as a matter of law, find that Ms. Fuhrman has failed to state a claim upon which relief may be granted. For that reason, the court will deny A&P's Motion with regard to Plaintiffs' negligence claim against them.

## III.     Conclusion

For the reasons discussed above, the court will dismiss Count III (IIED), Count V (assault and battery), Count VI (false imprisonment), and Count VII (loss of consortium) against A&P as improperly predicated upon respondeat superior liability. Insofar as Mrs. Fuhrman alleges direct liability against A&P in Count III (IIED), the court will also dismiss that count. Finally, the court will deny A&P's Motion with regard to Count I (Title VII), Count II (PHRA), and Count IV (negligence). An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Date:   January 27, 2010

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH FUHRMAN and RANDY FUHRMAN, : <br> : <br> Plaintiffs, : <br> : Case No. 1:09-CV-00841 <br> v. : <br> : (Judge Conner) <br> QUILL CORPORATION, et al., : <br> : <br> Defendants. : | |

## ORDER

AND NOW, this 27th day of January, 2010, IT IS HEREBY ORDERED THAT:

1. A&P's Motion to Dismiss (Docs. 36 & 38) Count I (Title VII), Count II (PHRA), and Count IV (negligence) of Plaintiffs' Complaint (Doc. 1) is **DENIED**;

2. Count III (IIED), Count V (assault and battery), Count VI (false imprisonment), and Count VII (loss of consortium) of Plaintiffs' Complaint (Doc. 1) are **DISMISSED** as to A&P; and

3. The parties are ordered to complete court-annexed mediation pursuant to our prior Order (Doc. 33).

            S/ Christopher C. Conner
            CHRISTOPHER C. CONNER
            United States District Judge